Opinion of the Court, by
Judge Owsley.
THIS is an appeal from a judgment rendered in favor of the appellees, in an action of debt brought by the appellant against them in the circuit court. The action is founded on a penal bond containing a condition in the following words: “ The condition of the above obligation is such, that whereas, on the 14th of August 1818, an execution of fieri facias, in favor of Samuel Patterson, which issued from the office of the Fayette circuit court against William N. Lane and George G. Taylor, for the sum of $1,600, with interest thereon from the 13th day of February 1818 until paid, and one cent in damages, came to the hands cf Thomas Scott, high sheriff of the county of Clark, and which said execution was afterwards, by James Lampton, deputy of said Scott, levied on a negro man slave named Otway, as the property of the said George G. Taylor, and the said Jonathan Taylor (one of the appellees) claimed the said slave Otway to be his own proper slave; and the said James Lampton, deputy as aforesaid, (the appellant,) left the said slave Otway in the hands and possession of the said Jonathan Taylor, for safe-keeping; and at the request of the said Jonathan, the said deputy sheriff summoned a jury to try the right of property, which jury found the right of said slave to be in the said claimant, Jonathan Taylor; whereupon the said Patterson, the plaintiff in said execution, executed to the said James Lampton, deputy sheriff as aforesaid, a bond of indemnity, with security, such as the law requires, to justify said deputy to sell said slave on said execution; upon which the said Jonathan Taylor failed and refused to give up into the possession of said James Lampton, deputy sheriff as aforesaid, the said slave Otway, so under the said execution: Now if the said Jonathan Taylor and John Martin, jun. his security, shall well and truly indemnify and keep harmless from all suits and demands, the said Thomas Scott, high sheriff as aforesaid, and the said James Lampton, deputy as aforesaid, in consequence of not selling the said *274 boy Otway, and shall well and truly pay to said James Lampton, deputy as aforesaid, all sums of money, damages and costs, which the said Patterson, or any other person for him, may recover against Thomas Scott, high sheriff as aforesaid, or against his said deputy, James Lampton, then this bond shall be void; otherwise to remain in full force and virtue,” &c.
The judgment was pronounced by the circuit court, against Lampton, on a demurrer to his declaration. The principle on which the decision of that court was made, does not appear from the record; but as the declaration is in the usual form, and contains the appropriate breaches, it is presumed the court was influenced by the supposition, that the bond on which the action is founded, is of no validity. In reviewing the decision of that court, therefore, the only inquiry to which the attention of this court will be directed, is into the legality of the obligation executed by the appellees.
If the bond be invalid, it must be in consequence of its having been made in violation of some principle of the common law; for there is no statute, either of this country or England, interdicting sheriffs from taking such a bond. There is a statute of this country, (1 Litt. 584, § 10,) taken from one of the 23d of Henry VI, chap. 9, providing the mode of taking bonds by sheriffs, from persons in their custody, and which declares that every obligation by any sheriff taken in any other manner than as directed by the statute, shall be null and void; but that statute has been invariably held to apply exclusively to bonds taken for the ease and favor of persons in custody of the officer. Accordingly it is said, that a bond to pay money into court, at the return of a fieri facias, is good; for though it be done by colour of office, and the condition is not according to the statute, yet it is valid, the statute extending only to bonds given by or for prisoners. 10 Coke 99 b; 5 Bac. Abr. 182; 1 Saund. 161, note 1.
The question as to the validity of the bond on common law principles, would have assumed a different aspect, if the slave had been in the possession of the sheriff under the execution, when the right of property was decided on by the jury, and the possession had been restored to Taylor (one of the obligees) after the bond and security of indemnity was tendered by the plaintiff in the execution. Under the act of this country regulating *275 the duty of sheriffs, (3 Littell 145,) where property taken in execution is claimed by any other person than the defendant in the execution, it is perfectly obvious, that the decision of the jury, empannelled by the sheriff, against the liability of the property to the execution, is a complete justification to the sheriff for not selling, unless the plaintiff in the execution tenders to the sheriff, bond with with sufficient security, to indemnify him against all consequences which may arise from a sale of the property. But if, after a decision of the jury against the liability of the property to the execution, the plaintiff insists on a sale of the property, and tenders such bond and security, according to the most natural import of the act, it would seem the sheriff ought to proceed in selling the property; and for a failure to do so, would be liable for any damage which the plaintiff in the execution might thereby sustain. The sheriff, it is true, could be subjected to no damage for not selling, unless the property should be finally proved to be liable to the execution; but, in the present case, as the plaintiff in the execution is alleged in the declaration to have recovered against the sheriff for not selling the slave, in reversing the decision of the court below on the demurrer, the allegations of the declaration must be taken to be true, and this court must assume the fact to be, that the slave was liable to the execution. It would seem, therefore, that if, at the decision of the jury, the sheriff had been possessed of the slave, it would have been incumbent on him, after the bond and security of indemnity was tendered by the plaintiff in the execution, to sell the slave; and consequently, if the bond had been given by the appellees in consideration of the sheriff’s refusal to sell, and of his having restored the possession to the obligor, Taylor, the consideration would have been in violation of the sheriff’s official duty. But even in that case, it might be a question, whether the bond would not, nevertheless, be valid; for although, at common law, it is a general rule, that wherever the consideration which is the ground of the promise, or the promise which is the consequence or effect of the consideration, is unlawful, the whole contract is void; yet there are exceptions to the rule, and the case of a promise to a sheriff, to indemnify him for taking property under a fieri facias, which is not subject to the writ, is said to form an exception, and *276 such a promise has been held valid. Cro. Jac. 652. And the reason is equally strong, in support of a bond given by a third person, claiming the property, to indemnify the sheriff for not selling. It is as much the duty of the sheriff not to take in execution property which is not subject to it, as it is to take and sell that which is subject. For a violation of his duty in either case, the sheriff is liable to the action of the person aggrieved; and if, for his safety, he may take a bond of indemnity from the plaintiff in the former case, no reason is perceived, why he should not be permitted to take such a bond from the person claiming the property in the latter case. By taking the defendant’s property in execution, the sheriff becomes liable to the plaintiff; but his liability has never been held to extend beyond the value of the property taken. For not selling the property, more could not be recovered from the sheriff than its value; and consequently, a bond given by a claimant of the property, to indemnify the sheriff, in substance and effect, is nothing more than a bond to pay the sheriff, if the property should prove to be liable to the execution. Hence, if, instead of assuming the form of an indemnity, the bond had contained a stipulation (such as in substance it imports) to pay the value of the slave, there could be no doubt of its validity. The validity of the bond would, then, not only be deducible from the principle recognized in the case cited from 10th Coke, but conclusively maintained by Love’s case, 1 Salk. 29. That was a case in which goods had been taken by the sheriff under a fieri facias, and the promise of a stranger to pay the debt to the officer, if he would restore the goods, was held to be a sufficient consideration. If, therefore, the promise of a stranger to pay the debt, on such a consideration, be valid, it would seem to follow, that a promise to indemnify the sheriff, as it is in substance a promise to pay, should be equally valid, if made on the same consideration.
But suppose such a promise not to be binding, and conceding for the present, that the bond on which this action is founded, would not have been valid, if it had been given in consideration of the sheriff’s restoring the slave to Taylor, still it would not thence follow, that the court decided correctly in sustaining the demurrer to the declaration; for it is apparent from the condition of the bond, that such was not the consideration for *277 which the bond was given. It is true, the bond purports to indemnify the sheriff for failing to sell the slave; but from a recital in the condition of the bond, it appears that the slave had been taken in execution by the sheriff, and left with Taylor for safe-keeping, and after the jury had decided on the right of property, Taylor refused to deliver up the slave to the sheriff. The sheriff could not, therefore, without having the possession of the slave, regularly proceed in the sale; and as his inability to do so, proceeded from the failure of Taylor to comply with his undertaking safely to keep the slave, it must be presumed that the bond was given by Taylor in consideration of his failure and refusal to restore the slave to the sheriff, and to indemnify the sheriff against any damage which might accrue in consequence of his being prevented from selling, by the conduct of Taylor. Let it not be said, that it was incumbent on the sheriff to keep the slave, after he was taken in execution, himself, and that it was a breach of his official duty, to deliver him to Taylor for safe-keeping. By delivering the slave to Taylor for safe-keeping, the sheriff, no doubt, cannot have discharged himself from any liability which he was under to the plaintiff in the execution, to have the slave forthcoming at the day of sale; but notwithstanding the sheriff remained liable to the plaintiff, it was a matter in his own discretion, whether he would keep the slave in his own possession or commit him to the care and possession of another. By taking the slave in execution, the sheriff gained such a property in him as would have enabled him to maintain an action against any person who might have taken or converted the slave to his use; and we apprehend the sheriff held such a property as enabled him to bail the slave to any other, for the purpose of having him kept safely until the day of sale.
The judgment must be reversed with costs, the cause remanded to the court below, and further proceedings had, not inconsistent with this opinion.